My name is Ashwani Bhakri. I represent Petitioner in this matter. This one is 027223. Make sure we got the right. We have several cases on the calendar with similar names. This one is 0272378. Okay, thank you. And I'm sorry I was distracted. Could you state your name again for the record? Ashwani Bhakri, Your Honor. Your Honor, this case essentially presents the issue of whether the board's adoption of the IHA's adverse credibility findings are supported by substantial evidence in the record. Petitioner submits that the board's decision is erroneous as the board failed to cite specific and cogent reasons for adverse credibility findings. Petitioner submits that his testimony was consistent, detailed, and plausible on all the material aspects of his claim. He provided sufficient details regarding the material aspects of his asylum claim. The IHA issued a one-and-a-half page of written decision on credibility. Nowhere in that one-and-a-half page did the IHA specifically refer to or cite reasons for the adverse credibility findings as required by the Ninth Circuit. Aside from the IHA's decision, IHA cited that Petitioner's testimony was not entirely consistent with the Declaration AR-46. Specifically, the IHA stated that Respondent's testimony was confusing and somewhat stilted and indicated an obvious difficulty that he has with dates. However, neither the board nor the IHA cited a single example specifying the reason where the Petitioner was confused. How was he confused with the dates if he gave inconsistent testimony? There's not even a single example on the record, Your Honors. And another example is on AR-47, IHA stated Petitioner was consistently unable to answer a question with any firmness, and he worried the dates and confused the dates in a way that he was not consistent with somebody who was telling a story about what really happened to him. Again, Your Honors, IHA did not identify the areas of testimony, and she did not explain or didn't cite any specific examples to justify her conclusions. May I ask a somewhat different question? Sure. Assuming for the purposes of the question that the testimony is accepted as true, where do we find persecution on account of a protected ground? Your Petitioner testified that he was a member of Akali Dal Man. He joined this organization in 1991. He explained the process as to how he became a member of this organization. He testified that he participated in rallies, and he was putting posters for the organization. And he was arrested in 1994 because he was planning a rally for the organization. Okay. I'm with you. Thank you, Your Honor. Your Honor, we submit that Petitioner must be found credible. The next question is if he's found credible, whether or not he has suffered past persecution. Petitioner submits that he has suffered past persecution. Petitioner testified that he was arrested and tortured. He was taken to the police station where he was beaten severely. His legs were rolled with a heavy roller, and he lost consciousness. And further, Your Honor, Petitioner testified that he was detained in a jail for a nine-month-long time period. Nine months long, even though it's one incident, but his life and liberty was taken away from him for a period of nine months. He was not permitted to see his family. He was not taken before a judge or magistrate. So we submit that he has suffered past persecution. Thank you. Thank you. And you've saved some time for rebuttal. Yes, Your Honor. Thank you. May it please the Court. My name is Earl Wilson on behalf of Respondent, the Attorney General. Respondent submits, Your Honor, that there's ample evidence in the record to support the two findings of the Board in this case. First, that Petitioner's testimony is not entirely credible. And secondly, that even if credible, Petitioner simply did not meet his burden of showing past persecution or a well-founded fear of persecution on account of a ground protected under the Act. Now, the first thing I want to point out, Your Honor, is that Petitioner bears the burden not only of demonstrating that he was persecuted or harmed in the past, but he also bears the burden of showing who he is, and in the context of this case, his association and political involvement on account of the Now, the adverse credibility finding in this case specifically went to the issue surrounding why Petitioner became involved and how he was involved with Ali Dalman. Now, what he testified to, or at least what his asylum application said, and this is on pages 287 to 288 of the record, it said that his father was arrested and detained for six days and released on February 17, 1992. Now, in his testimony, and this is on pages 72 to 73, he says that his father was arrested and detained and released on June 6, 1992. That's a period of approximately, I think he was arrested in February and released on June 6. So approximately four months. Now, the important thing that I need to further point out is that the dates of this Petitioner's arrest was critical to his involvement on behalf of the Sikhs and Ali Dalman, according to his testimony. On page 71 of the record, Petitioner identifies his father's arrest as a precipitating point in his political involvement. His testimony, I think verbatim, says that that arrest led him to participate more fully on behalf of Sikhs. So that sort of puts this whole date of his father's arrest in context, that it really relates to his involvement and also to a lesser extent his identity. And the reason why that's important, Your Honor, is that if you look at this record in its totality, you see an individual, a Petitioner, who comes into the country on a fake passport. In addition to that, he has not – he has no outside indicia of being a Sikh. I mean, he agrees with all of that. In addition to that, when he said he was a member of the Ali Dalman and he received a receipt, but he doesn't have a copy of the receipt. There was no other indicia of his involvement. Then the immigration judge also asked him for corroborating evidence, and he gives an explanation or various explanations that's really not worthy of credence. As to his father, he says his father can't make it. As to his siblings, they can't make it. And as to his wife, she can't get the very documents that are important to establishing his claim. And so the immigration judge had – and in addition to that, the immigration judge is looking at his demeanor and makes specific findings. Now, I want to address something that Petitioner pointed – suggested here, is that there's no specific finding as to credibility. It's clear that the IJ decision refers to the dates. And it's clear from the record that that's the dispute that's at issue here. And in fact, Petitioner's brief points out that that's where the dispute lies. So while the immigration judge's decision isn't a model of clarity, it identifies the dates and it clearly is supported by the record in this case. So on that basis, the Court should – the immigration judge, looking at all of the evidence in this case, had ample reason to make its credibility findings. And so this Court, in our appeal here, the Petitioner's burden is not to demonstrate that the immigration judge or another fact finder could find opposite, that being that he was credible. He has to demonstrate that this record, where he is clearly inconsistent as to his dates, where he has a false passport, where he testifies that the other inditious to his identity and his political involvement cannot be produced because of really frivolous reasons, that when you look at that entire record, he has to demonstrate that the record compels a finding that the immigration judge's determination is wrong and that the BIA's determination that the immigration judge was correct, that all of that is wrong. He simply cannot do that on the strength of this record. But even more importantly, Your Honor, taking aside the issue of credibility, the Board found that even if this Petitioner was credible, there is ample evidence to demonstrate that he has not met his burden of showing past persecution or well-founded fear of persecution on account of a grind under the Act. I'll focus specifically on what I think is really the strength of the government's case here. If you look at the country reports, there are a couple of things that are relevant, not only on the well-founded fear front, but also with respect to Petitioner's credibility. And that's on page 233 of the record. There's a summary of most frequent current claims and considerations for adjudication in the context of Sikh asylum claims. And what it says here is that, and I'll down at the bottom, page item number 62, credible Sikh applicants initially should establish their identity, show evidence of their residence in Punjab or an immediately adjacent area. Sikh residents outside the Punjab rarely experience serious difficulties, either with the authorities or with members of other religious communities. Further on it says, applicants frequently provide little information on the I-589, that's their asylum application, about their education, occupation or family. This may be an indication that they're not from the Punjab and are providing as little information as possible in order to circumvent credibility issues. The point of that is that if you take that information back to the credibility finding, the immigration judge has this information, which is provided by the State Department. And it's in the context of this information and others. I mean, for example, I go back to page 233. A 1994 report from New Delhi showed that every asylum case investigated in the six-month period involved fraudulent claim. It is this record that the immigration judge has before it. When it looks at the testimony in this case. Kennedy. First, that supports denying every claim by every Sikh. Is that right? No, it doesn't. In a case where a Sikh comes in and demonstrates and meets his or her burden, the claim will be sustained. But it puts the immigration judge in the mindset that there is a problem here involving several of these claims. What was shown by his location, identity and where he lived? I didn't hear. What does the record show about his identity and where he lived in India? He testified that he lived in Punjab. But again, when the immigration judge and that he attempted to join the his involvement in the Ali Dalman was precipitated by his father's arrest, but he comes to the immigration court with a fraudulent document, nothing to establish his identity, nothing, no objective evidence to establish that he's a member of Ali Dalman. And when asked to explain why he didn't corroborate it, he gives reasons that are really mysterious. His father, who is presumably was arrested and detained for four months, can't help him. His siblings can't help him. And his wife can't help him. Now, he has a burden. And it's more to discharge that burden, it's more he's required to do more than he says I can't do. Can I go back for just a minute to clarify? You mentioned 100 percent of the claims were fraudulent. I want to make sure that we're on the same page on that one. My understanding of that paragraph in the report is that 100 percent of the claims from New Delhi were fraudulent. This is not 100 percent of Sikh claims that are fraudulent. That's correct, Your Honor. They're not speaking of Sikh claims from the Punjab. And here the issue may be, is he from the Punjab? That's correct, Your Honor. Okay. But the reason I say that is that the immigration judge sees in the State Department it's a very difficult position that they're in. I mean, individuals, you know, who have credible claims are entitled to asylum. However, the government looks at these claims, and in some cases they're not supported by the record. In some cases they're false. And I think that's the finding in this case. The other point I want to make, Your Honor, is that the country reports at issue in this case is the 1996 report. And I think even aside from this, and we point out in the record, the relationship between Sikhs and the Indian government has changed substantially. But it just really cannot support a finding that this particular petitioner has a well-founded fear. Sikhs in the Punjab reason, as of 1996, were involved in every major aspect of life in the region. The record also shows that there's a substantial portion of the police force. Can we find that if the immigration judge or BIA didn't? Well, I think the Board's decision in this case is on page 2. It says, Even assuming arguendo, that the Respondent provided credible testimony, we find that he failed to sustain his burden of proof in establishing past persecution or a well-founded fear of future persecution. Now we don't know on account of. It's probably the next three words. We don't know which part of that compound sentence they're ending on. And I would guess it's either depending on the on account of. As with respect to the past persecution, that's correct, Your Honor. But with respect to future persecution, it's in light of the record in this case. It's in light of country reports. It's in light of his claim. It's in light of the really somewhat isolated incident that he complains of. But most importantly, you've got country reports here that show that even if he's to be believed, the conditions in Punjab for Sikhs have changed substantially from those reported. There was a 1997 addendum, I think, to this 1996 report. Is that in the record here? I would have to go back and see. I'm not entirely sure. But my recollection from looking at the country reports in this case here, they provide substantially. There is ample evidence here to support the finding. On page 112 of the record, I'm not sure if this is fully an addendum, it does say that politically also the situation in Punjab is normal. But this is a January 22 report. It says that political situation in Punjab is normal. Both factions of Ali Dalman are fielding credible candidates in state assembly elections. So if you look at this record, even if Petitioner's testimony is correct as to the past. Well, it is a 1997 addendum, I see. Yeah. And so if you look at the record, and even if the Court were to find that the IJ's determination as to credibility is not sustainable, and we think it is, you then get to what is clearly a very strong country report that undermines any notion that this Petitioner here has a well-founded fear of future persecution in India. Unless there are any further questions, I rest on my submission here. Thank you, Your Honors. Thank you for your argument. May I address a few? Please. Thank you. First of all, the Government Council argued about documentation. Your Honors, Petitioner adequately explained to the immigration judge that why he doesn't have the documentation. On AR-80, he testified that the police took away his driver's license. And on page 80, I believe, Your Honor, the Petitioner testified, when I was arrested by the police, they tore up all of the documents, and I was getting with me at the time. And I believe that documentation includes his membership card from the Khalil-ul-Man party and his driver's license. That was the only document, I presume, he had. And secondly, record, it's important to consider, is that the record is silent as to whether replacement documents could in fact be obtained. There's no such discussion on the record. Well, there is some. There's questioning, well, okay, so if it is true that these documents were all torn up, couldn't you get replacement documents? And he says, well, my father's elderly, there's nobody in the immediate family. Well, they're, you know, it's too hard for them. I know that we have a doctrine that says supporting evidentiary documents are often hard to get, and it should not be held against someone that he does not produce them in those circumstances. But I'm not sure that I should treat it as totally irrelevant when he says I have nothing. And he then is able to get nothing. It's not a specific document that's necessarily here. It's any document that shows you're from the Punjab. That's correct, Your Honor. But nobody asked him specifically what documentation he needs to produce. He was more concerned with ID documentation, which was his driver's license, and I don't know if a replacement document in somebody's absence can be obtained. The petitioner was here, so there's no such discussion on the record. Secondly, Your Honor, about this petitioner's demeanor, immigration judge did not comment on his demeanor, did not say anything whatsoever like that he was hesitant or he paused during his testimony or he failed to have eye contact when immigration judge questioned to him. There was no such indication on the record whatsoever. So his demeanor must be accepted and consistent with his testimony. So you're saying that on page 47, I guess it is, of the excerpt of record, which is page 3 of the immigration judge's order, when she speaks specifically about the witness's demeanor and then talks about the fact that she did not find him credible, in part because he was unable to answer questions with firmness, that's not a demeanor observation? That's how I read it. Your Honor, but immigration judge failed to give a single example, like what she had expected from the petitioner. Well, the fact that a witness is not able to answer a question directly or, you know, with some degree of certainty is a demeanor observation, is it not? But your record doesn't show that, you know, this petitioner was evasive or he avoided any to give any answers. There's no such record. Maybe I'm reading too much into what she said there, but it just seems to me that when the judge who looked at the witness is saying I was struck by the fact that the witness was unable to answer questions with firmness, that's as good an observation as you can make on a demeanor issue. I don't know what more you can say. But, Your Honor, again, I submit that there should be some sort of example, you know, that he failed to do this. I asked him this. But the example is that the witness can't answer the questions firmly, I mean, which I read to mean, you know, with conviction, believable, in a believable way. Your Honor, we submit that Petitioner testified in a candid and forthright manner, and he testified to the best of his ability. The gentleman has been. I understand your position, but I'm looking at her characterization of his testimony. And I'm wondering, isn't that an example of demeanor, and don't we have to give special deference under our case law to the fact finder's observation on a demeanor issue? Well, Your Honor, again, I submit that he testified to the best of his ability. This gentleman is a he I think he failed 10th grade, and he has been a farmer throughout his life, and he had no quote from experience. So he testified to the best of his ability. Okay. That's what I submit.  Thank you very much. Thank both counsel for their argument in this case. And thank you for appearing. Thank you very much. Thank you. The case of Schindler-Singh v. Ashcroft is now submitted. The next case on the argument calendar.
judges: Canby, W. Fletcher, Tallman